UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:13-CV-382-REW |
| | ) | |
| TONITA RESTAURANT, LLC, an | ) | MEMORANDUM OPINION AND |
| unknown business entity d/b/a Tonita | ) | ORDER |
| Restaurant a/k/a Club Nocturno Tonitas | ) | |
| Bar/Grill/Nightclub, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff J & J Sports Productions, Inc. (J & J Sports) moved for summary judgment on all claims against Defendant Tonita Restaurant, LLC, an unknown business entity d/b/a Tonita Restaurant a/k/a Club Nocturno Tonitas Bar/Grill/Nightclub (Tonita).[1] DE #36 (Motion).[2] Defendant did not respond.[3] The motion is ripe for consideration. For

---

[1] The motion addresses only Defendant Tonita. The Court, on Plaintiff's motion, previously dismissed the complaint without prejudice as to Defendant Antonia Romero, both individually and d/b/a Tonita Restaurant a/k/a Club Nocturno Tonitas Bar/Grill/Nightclub. DE #44 (Order).

[2] No counsel currently represents Tonita. *See* DE #35 (Order permitting defense counsel to withdraw, ordering Tonita to secure new counsel and have that counsel appear by August 28, 2015, and discussing an LLC's inability to appear *pro se*). Tonita has made no further filings in the case. The Court proceeds mindful of this posture. The Court would likely be justified entering default judgment against Tonita, given case posture. *See, e.g.*, *Flynn v. Thibodeaux Masonry, Inc.*, 311 F. Supp. 2d 30, 37-38 (D.D.C. 2004); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991) (upholding entry of default judgment where defendant ignored a court order directing that it retain counsel). Instead, however, the Court assesses the summary judgment motion on its merits. *See, e.g.*, *Xerox Corp. v. Print & Mail by Morrell, Inc.*, 13 F. Supp. 3d 265, 266 (W.D.N.Y. 2014) (granting motion for summary judgment on merits after court ordered defendant to retain counsel, but no counsel appeared).

1

the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment (DE #36). As to the distinct federal statutory claim against Tonita, the case presents no genuine dispute of any material fact, and Plaintiff demonstrates, via unopposed motion and proof, its entitlement to relief. Summary judgment is improper, however, on the state law conversion claim.

I.   BACKGROUND

On November 12, 2011, Manny Pacquiao fought Juan Manuel Marquez for the World Boxing Organization Welterweight Championship.[4] J & J Sports purchased the exclusive commercial exhibit licensing rights to broadcast this program domestically (including undercard bouts, as defined in Complaint ¶ 9). *See* DE ##36-4 (Gagliardi Affidavit), at ¶ 3; *id.* (License Agreement), at 10-17. J & J Sports alleges that Tonita, without authorization and without purchasing a commercial license permitting program broadcast, intercepted, received, published, divulged and/or exhibited the program at Tonita Restaurant on Winchester Road in Lexington via satellite. DE #1 (Complaint), at ¶ 12; *see also id.* at ¶ 7 (alleging Tonita's involvement); DE #19 (Answer), at ¶ 8

---

[3] Failure to respond is not itself grounds for the Court to grant summary judgment because summary judgment by default is improper. *See Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (*per curiam*); *see also Green v. United States*, No. 11-59-HRW, 2013 WL 209019, at *2 (E.D. Ky. Jan. 17, 2013). Upon consideration of "the motion and supporting materials," the Court can grant summary judgment if otherwise proper. Fed. R. Civ. P. 56(e)(3). A failure to respond is consequential, though, if the precipitating motion has merit under the summary judgment rubric.

[4] Pacquiao won by a majority decision. *See* Greg Bishop, *In Tight 12 Rounds, Pacquiao Retains His Title*, N.Y. Times, Nov. 13, 2011, at SP10, *available at* http://www.nytimes.com/2011/11/13/sports/in-tight-12-rounds-pacquiao-beats-marquez-by-decision-to-retain-wbo-title.html?_r=0 (calling the bout an "instant classic") (last visited Oct. 28, 2015).

(admitting the content of Complaint ¶ 7). J & J Sports alleges Tonita did not pay the applicable $2,200.00 fee to broadcast the program.[5] DE #36-1, at 2.

## II.  STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all

---

[5] J & J Sports's factual recitation is unopposed. Still, at this stage, the Court must view the facts in the light most favorable to the nonmovant. However, "[w]hen a party does not file an opposition to a motion for summary judgment, the Court is permitted to consider the facts presented in support of the motion as undisputed and may grant summary judgment if the facts show that the movant is entitled to judgment in his favor." *Moudy v. Elayn Hunt Corr. Ctr.*, No. 14-193-JJB-RLB, 2015 WL 4772042, at *5 (M.D. La. Aug. 12, 2015); *see also Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) ("[A] non-response runs the risk of unresponded-to statements of undisputed facts proferred [sic] by the movant being deemed admitted. . . . [However, b]efore summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed. . . . And, of course, the court must determine whether the legal theory of the motion is sound. Thus, Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion . . . is unopposed."); *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242, 244 (2d Cir. 2004) (Rule 56 "does not embrace default judgment principles."; "[F]ailure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.").

Defendant's failure to engage in the litigation is significant. For instance, its failure to answer or object to requests for admission within 30 days results in the matters being admitted and "conclusively established." Fed. R. Civ. P. 36(a)(3), (b); *see Ky. Petroleum Operating Ltd. v. Golden*, No. 12-164-ART, 2015 WL 927358, at *3 & *3 n.2 (E.D. Ky. Mar. 4, 2015) (relying on the facts of unanswered requests for admission and enforcing the rule). "Unanswered requests for admissions may be relied on as the basis for granting summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007). By failing to respond, Defendant admitted that, *inter alia*, it intercepted the broadcast of the Event, broadcast the Event, advertised that the Event would be telecast, required a cover charge, and did not obtain a license to broadcast the Event. DE #46-1 (Unanswered Requests for Admissions). Additionally, if a party "fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2).

reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." (emphasis in original)).

4

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

### III.   ANALYSIS

With no Defendant response or filing, the Court, as it earlier notified Defendant it would, "consider[s Tonita] to have no factual or legal basis for opposing the relief sought by Plaintiff." DE #37 (Order). J & J Sports proves its entitlement to relief regarding the federal statute, but not conversion.

#### A.   Statutory Liability and Damages

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, . . . to any person other than the addressee, his agent, or attorney . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of

5

> such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).[6] The statute applies to satellite transmissions. *Cablevision of Mich., Inc. v. Sports Palace, Inc.*, 27 F.3d 566, at *3 (6th Cir. 1994) (table); *J & J Sports Prods., Inc. v. Castillo*, No. 13-cv-377-KSF, 2014 WL 1281478, at *2-*3 (E.D. Ky. Mar. 27, 2014). It is a strict liability statute, although "intent is relevant to the calculation of plaintiff's remedies[.]" *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08 CV 1259, 2009 WL 1767579, at *4 (N.D. Ohio June 22, 2009) (internal quotation marks removed).

"Any person aggrieved by any violation of subsection (a) of this section . . . may bring a civil action in a United States district court[.]" 47 U.S.C. § 605(e)(3)(A). Section (d)(6) defines "any person aggrieved". J & J Sports plainly falls under the definition here. *See Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 912-13 (6th Cir. 2001) ("By adding satellite communications under the protection of § 605 . . . Congress sought to make clear that those with 'proprietary rights in the intercepted communication by wire

---

[6] J & J Sports also discusses § 553 in its summary judgment brief before confirming that it only "seeks judgment pursuant to 47 U.S.C. § 605." DE #36-1, at 5. The Court thus cabins its analysis to § 605, **DENIES** DE #36 as to Count II of the Complaint, and *sua sponte* **GRANTS** summary judgment to Tonita on Count II. Plaintiff, as a matter of election, abandoned the claim. *See, e.g.*, *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013).

A court may grant "summary judgment *sua sponte* . . . so long as the losing party has notice and an opportunity to respond[,]" which is satisfied when the losing party "presented the claim to the district court" and "had considerable opportunity to address" the claim, as J & J Sports did here. *Global Petromarine v. G.T. Sales & Mfg., Inc.*, 577 F.3d 839, 844 (8th Cir. 2009); *see also United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955-56 (9th Cir. 2008).

or radio, including wholesale or retail distributors of satellite cable programming,' 47 U.S.C. § 605(d)(6), have standing to sue.").

J & J Sports proves through its unopposed motion that Tonita violated § 605(a). The unopposed evidence shows that Tonita, without authorization, intercepted the Program and / or received, divulged, and published its contents to another person by displaying the Program at Tonita Restaurant on November 12, 2011, without authorization or a license while individuals were present. *See, e.g.*, DE #36-3 (Keebortz Affidavit), at 3 (averring that, at 9:48 p.m. on November 12, 2011, Investigator Keebortz entered Club Nocturno Tonitas Bar/Grill/Nightclub on Winchester Road in Lexington and observed that the establishment "was displaying" the program). The investigator counted approximately 15 people inside the establishment and 3 televisions / viewing monitors. *Id.* He noted that he heard Juan Carlos Burgos announced as a winner of an undercard bout. *Id.* Joseph M. Gagliardi, J & J Sports's President, confirmed via affidavit that Tonita never "lawfully license[d] the Program from J & J Sports Productions, Inc." DE #36-4, at ¶ 7. At a minimum, this violates sentence one of § 605(a). *Eliadis*, 253 F.3d at 915-17. Further, Defendant admitted, through unanswered requests for admissions, that it intercepted the broadcast of the Event, broadcast the Event, and did not obtain a license to broadcast the Event. DE #46-1. Tonita is thus liable to J & J Sports on Count I of the Complaint. The Court **GRANTS** DE #36 as to Count I.

The Court "may award damages as described in subparagraph (C)[.]" 47 U.S.C. § 605(e)(3)(B)(ii). The aggrieved party may elect either to recover actual or statutory damages. *Id.* § 605(e)(3)(C)(i). J & J Sports chose statutory damages. DE #36-1, at 10. Thus, "the party aggrieved may recover an award of statutory damages for each violation

of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]" 47 U.S.C. § 605(e)(3)(C)(i)(II). Further, "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." *Id.* § 605(e)(3)(C)(ii). Additionally, "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." *Id.* § 605(e)(3)(C)(iii). "Plaintiff requests $6,600 in statutory damages and $19,800 in enhanced statutory damages [under (e)(3)(C)(ii)], for a total award under Section 605 of $26,400." DE #36-1, at 10.

Defendant does not oppose Plaintiff's damage valuation.[7] The Court views the demand, in context, as reasonable. "Nationwide, courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation." *J & J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 676 (D.S.C. 2011). Regarding enhanced damages, courts consider "the need to deter this unlawful activity," "the purpose of the legislation[,]" and

---

[7] Nor does it provide any basis for an (e)(3)(C)(iii) mitigation finding.

the need for "a firm judicial hand . . . to stop this predatory behavior, which is outright thievery, and to compensate the aggrieved appropriately." *Id.* at 677 (internal quotation marks omitted). Other courts look to whether "a cover was charged, . . . the program was advertised, . . . food or drink prices were increased, and . . . [the] establishment[] w[as] . . . filled to capacity." *Easterling*, 2009 WL 1767579, at *6. Courts examine a variety of factors, including "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event." *J & J Sports Prods., Inc. v. McCausland*, No. 1:10-cv-01564-TWP-DML, 2012 WL 113786, at *4 (S.D. Ind. Jan. 13, 2012). Deterrence, aiming to discourage future unlawful conduct through "substantial" financial penalization, for this and future defendants is an additional important factor. *Id.*

"The Supreme Court has defined 'willful' in the context of civil statutes as conduct showing 'disregard for the governing statute and an indifference to its requirements.' *Transworld Airlines, Inc. v. Thurston*, 105 S. Ct. 613, 624 (1985). . . . Other district courts have ruled that a court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. *Time Warner Cable of N.Y.C. v. Olmo*, 977 F. Supp. 585, 589 (E.D.N.Y. 1997); *Fallaci v. The New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)." *Easterling*, 2009 WL 1767579, at *6 n.2 (internal quotation marks and paragraph breaks removed; citations altered). The Court, utilizing the appropriate "inference of willfulness from a defendant's failure to appear and defend an action," and based on the tendered unopposed evidence

9

(including the unanswered requests for admissions), finds the (e)(3)(C)(ii) predicates satisfied. Ultimately, the Sixth Circuit gives district courts great discretion to calculate § 605 damages. *Eliadis*, 253 F.3d at 918 ("Although the district court did not specify precisely how it arrived at the final figure of $4,500, we conclude that the proof supports the damage calculation, that the amount is well within the statutory range, and that the award is not clearly erroneous.").

The unpaid licensing fee here, per the proffered schedule, is $2,200.[8] *See* DE #36-4 (Advertisement), at 18. Applying the general factors above, and because Defendant does not oppose the relief sought, the Court awards J & J Sports the requested $6,600 in statutory damages and $19,800 in enhanced statutory damages,[9] for a total award of **$26,400**.

---

[8] Courts recognized that "a damage award based exclusively on licensing fees would undercompensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that [Plaintiff] can charge for sublicenses." *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001). Further, "[m]erely requiring [Defendant] to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute [deterrence of future violations]. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (internal quotation marks removed). The Court finds a treble award, as Plaintiff suggests, appropriate here. Unlawful access must cost a violator more than face ticket price.

[9] The enhanced damages calculation is again triple the statutory damage award. Cases recognize that there is no precise formula; the matter is firmly in the Court's discretion. In these circumstances, where Defendant does not object, the Court finds the tripled, but sub-$20,000, figure reasonable. *See, e.g.*, *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 668-69 (E.D. Va. 2013) (awarding a "milder fine" of $27,000); *Al-Waha*, 219 F. Supp. 2d at 777 (approving tripling the damage award); *McCausland*, 2012 WL 113786, at *4 (awarding $30,000). Factors influencing the Court include the evident advertising and cover charge, *see* DE #46-1, the failure to defend in the case, and the obvious call for deterrence of like conduct. Touting the broadcast (without the broadcast right) is a clear indication of intentional misappropriation.

B.  *Conversion*

J & J Sports also seeks recovery under a Kentucky state-law conversion theory. "Conversion is an intentional tort that involves the wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014). "In Kentucky, a claim of conversion consists of the following elements:

> (1) the plaintiff had legal title to the converted property;
> (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;
> (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;
> (4) the defendant intended to interfere with the plaintiff's possession;
> (5) the plaintiff made some demand for the property's return which the defendant refused;
> (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and
> (7) the plaintiff suffered damage by the loss of the property.

*Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005).

J & J Sports's entire discussion of its conversion claim is the following: "Plaintiff had the exclusive commercial distribution rights over the Program, and, as such, Defendants' interception and broadcast of the *Program* without Plaintiff's authority, as established above, is a conversion." DE #36-1, at 9.

Kentucky courts do not appear to have addressed whether conversion applies to intangible property, like the satellite signals or television broadcast at issue here. Most states, however, have rejected or at least qualified intangible conversion, as do most states in the Sixth Circuit. *See Stratienko v. Cordis Corp.*, 429 F.3d 592, 602-03 (6th Cir. 2005) (acknowledging Tennessee's determination that "only a minority of courts

11

recognizes conversion of intangible property"); *Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381, 392 (Tenn. Ct. App. 2014) ("[A]n action for the conversion of intangible personal property is not recognized in Tennessee."); *Sarver v. Detroit Edison Co.*, 571 N.W.2d 759, 586 (Mich. Ct. App. 1997) (only extending conversion to "the kind of intangible rights which are customarily merged in, or identified with, some document or other tangible property");[10] *but see Eysoldt v. Pro Scan Imaging*, 957 N.E.2d 780, 786 (Ohio Ct. App. 2011) ("At common law, the general rule was that only tangible chattels could be converted. But the law has changed, and courts have held that identifiable intangible property rights can also be converted." (footnotes removed)); *see also, e.g.*, *Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 809 (N.D. Ill. 2011) (dismissing a conversion claim on the grounds that "Illinois courts have not yet extended the tort of conversion to intangible property like television programming"); *DIRECTV, Inc. v. Hubbard*, No. Civ.A. 2:03CV261-P-D, 2005 WL 1994489, at *4 (N.D. Miss. Aug. 17, 2005) (concluding that Mississippi conversion does not extend to the unlawful interception of satellite transmissions). Black's defines conversion as "an act or series of acts of willful interference, without lawful justification, with *an item of property* in a manner inconsistent with another's right, whereby that other person is deprived of the use

---

[10] *See also D'Anna v. Furgal*, No. 320652, 2015 WL 5487927, at *2 (Mich. Ct. App. Sept. 17, 2015) ("Intangible personal property . . . can be converted, but generally only if the intangible property is in some way linked with tangible property.") Kentucky may, if the question is squarely presented, toe a similar line. *Cf. Wood v. Commonwealth*, 17 S.W.2d 443, 444-45 (Ky. Ct. App. 1929) (permitting a claim for conversion of a stock certificate as "representative of the shares[,]" acknowledging that "[t]he shares are the property converted[,]" but stating, "The certificate of stock as distinguished from the shares of stock which it represents, is not only property, but is tangible personal property.").

and possession of the property." Black's Law Dictionary 356 (8th ed. 2004) (emphasis added).

In similar circumstances, the Sixth Circuit has previously affirmed dismissal and "decline[d] to extend Tennessee's law of conversion." *Intera Co., Ltd. v. Dow Corning Corp.*, 19 F.3d 19, at *4 (6th Cir. 1994) (table). Even if the Court considered J & J Sports's conversion claim legally proper under Kentucky law, Plaintiff has not proven an entitlement to relief. Specifically, J & J Sports put forward no proof, at a minimum, that Defendant "exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property[,]" that Defendant's "act was the legal cause of the plaintiff's loss of the property[,]" or that J & J Sports "made some demand for the property's return which the defendant refused" or "los[t]" the property. Thus, regardless of Kentucky's posture as to intangible conversion (*i.e.*, even if the Commonwealth recognizes such a theory), Plaintiff fails to put forward sufficient proof to supports its claim for summary judgment on state-law conversion. The Court thus **DENIES** DE #36 as to Count III of the Complaint. J & J Sports **SHALL** file a notice **within 14 days** stating whether it intends to move forward with the conversion claim via trial or abandons the claim.

C. *Costs and Reasonable Attorney Fees*

The Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). The Court has determined that J & J Sports is an aggrieved party, and it has prevailed on the statutory claim in this case. Therefore, per the statute, Plaintiff is entitled to an award of full costs, including reasonable attorney fees. J & J Sports **SHALL** file an itemized and

properly supported costs and fee claim **within 21 days**. Defendant Tonita may respond **within 10 days** of J & J Sports's filing. The matter will then stand submitted.

IV.     CONCLUSION

On the terms and for the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment (DE #36). The matter remains pending as to Count III only.

The Clerk shall serve this Order on Defendant Tonita Restaurant, LLC, at the address listed in DE #32, at 2.

This the 28th day of December, 2015.

Signed By:
*Robert E. Wier*  REW
United States Magistrate Judge